The next case on the call of the docket this morning is Agenda No. 20, No. 128040, Henry Channon et al. v. Westward Management, Inc. Mr. Paul Esposito, are you ready? Thank you. Good morning to you all, and may it please the Court. I'm Paul Esposito here with James Weck. We represent Westward Management in this case. The certified question asks whether an implied right of action is created against a property manager for alleged charges for providing documents under Section 22.1 of the Condominium Property Act. That's the question, and the answer is no. This is the type of case that gets resolved under the four-factor test that's used in the Metzger case, it's used in the Fisher case, it's used in the Abbasi case, it's used in a whole lot of cases, both in the Supreme Court and in the Appellate Court. All four factors must be met to imply a private right of action, and in fact, none of them can be met. The first factor is whether the plaintiffs are members of the class that was the intended beneficiary of the act. The issue gets resolved under the lens of Fisher and Metzger. They discussed what is the primary incidental standard for this factor. Primary meaning if a statute can be looked at as providing more than one purpose, what's the primary purpose? And is the other purpose really incidental to the primary purpose? And Metzger talked about the personnel code and said, well, there's some benefits to employees. The code is really there for the benefit of the government and the public. In the Fisher case, they talked about the nursing home care standard. Again, there were some benefits in that statute for the protection of employees, but the primary purpose of that statute was to protect, excuse me, nursing home residents. And the incidental purpose really served that primary purpose. That's what you have here in this case. You start, as the Court always does, with the plain language of the statute, Section 22.1. Paragraph A says that the owner shall obtain from the Board of Managers certain documents. It's an obligation, not a benefit to the owner. Paragraph B says that the owner must do so, the seller, within 30 days of a request. Why? Because the purchaser needs those documents in order to make a timely decision as to whether to buy. Paragraph C, in its first paragraph, talks about the fact that if you have a mortgage instrument or debt instrument that you've recorded on the property, you've got to let the association know, because that's information that the association is ultimately going to be needing to pass on to the purchaser. And Paragraph 2 of C is really the nub of this case. It's where a plaintiff claims they're right. It says that an association may charge a reasonable fee. That can be looked at as a benefit to a seller, in a sense. But the real benefit is the seller is being required by the Act to get these documents. We're not going to penalize them by charging too much, but to get these documents so that the purchaser has them to make an informed decision. Wouldn't that necessarily be, to get the documents, the seller would have to go to the management company, or the board would have to go to the management company to get the documents themselves? The board doesn't have to go to the management company. The board, in this case, set that up. It's the board's obligation under the statute, again, subsection A, subsection C, to provide those documents. What the board did here, for reasons of its own, is it said, I want the management company to provide that document. As we'll get to in the fourth factor, that didn't clear the association of its duties under the law. The case law, that's group. Once we figure out who the primary is, and in this case we have a lot of cases that say the primary beneficiary are the buyers. Once we figure that out, does that end the analysis, or is this more of a sliding scale situation, where we figure out primary, incidental, but if the incidental is fairly great, then maybe the board carries some weight? It ends the analysis. It ends the analysis. The court has said very clearly that each factor has to be met. So if they can't meet the factor, if I'm understanding your question, if you can't meet the factor, the case is over. And they can't meet the factor. In Metzger, as I said, Metzger, Fisher, they provide the analysis. The Illinois Appellate Court, in three different cases, has said that this statute is there to protect the purchaser, so the purchaser can make an informed decision. And in the federal cases that we've cited in our briefing, and we know, federal cases are persuasive. You don't have to follow them, but there's reason to follow them. They're logical, they make sense under the language of the statute, and they should be followed. The decision-makers here, it's interesting, the Appellate Court, paragraph 21, said, you know, the primary purpose is the protection of sellers, but there are other purposes. But the primary purpose is what this court has been looking for in these types of cases. The trial court said this statute provides a, quote, shred of protection to the sellers. It provides a lot more than a shred to a buyer, because that's the purpose of the statute. Historically speaking, I think you can see this also. You know, condominium ownership is really a relatively new thing in Illinois law. It started in the 60s, and the Condo Property Act is 1963. But if you look at the original act, and it's worthwhile looking, there's not a section in there that deals with seller disclosures to buyers. It deals with how the buyer gets relevant information from a condo association. As we know, the 60s and the 70s were periods of consumer protection. That was when the movement was starting up. In 1972, the legislature realized, you know, we need some protection for elderly people and all others who are buying, for the first time, a unit from a developer. So section 22 of the act, which is similar in a number of respects to section 22.1, provided these purchaser benefits. Then in 1980, and, you know, by the time you get to 1980, people are probably selling their units. People who originally bought, they've died, they've moved on, they've gone wherever. So the legislature realized that there was still more to be done. And so it created 22.1, which protects purchasers in the event of a resale. So that's how it came up here. I think the court's error was it saw that there could be, the act could be construed to say, well, yeah, the seller gets some benefits, too. But that wasn't the primary purpose. The court's other error is it said that 22.1 facilitates sales. That's what the appellate court said. This is a benefit to a seller because it facilitates a sale. But when you think about it, it really doesn't. And the reason why it doesn't is because the seller is providing information to the buyer, and the buyer can look at this information and say, I don't want to go anywhere near this building. And there may be asbestos abatements going on, window replacements going on. There may be structural issues, there may be bylaw lease provisions that the purchaser finds totally unacceptable. And so in that case, the seller is going to walk away, excuse me, the buyer is going to walk away from the deal. It doesn't facilitate the sale. What it facilitates is the ability in a purchaser to make an informed decision about the case. It brings us to factor number two, what was the type of injury that was intended to be prevented? It was a purchase. It was a purchase by a buyer who was uninformed of the facts that the buyer needed to make a good decision, to see if this property really fit his or her needs. It wasn't to protect the seller from cost. The third factor, is a private right of action consistent with the statute? The answer is no, because the purpose of the statute was something far different than what the plaintiffs contend. The purpose of the statute was to prevent uninformed buyers. That's what the legislature was getting at. And fourth, was a private right of action necessary in order to provide an adequate remedy for the violation of the act? Here, the claim violation of the act is they were charged excessive fees for these condo documents. Counsel, I know Justice Burke asked you if we find that they have not established number one in these four properties. And you indicated no, that ends the inquiry. But is there a reason for us to go into the other parts of the test just to provide clarification? You know, the reason I'm doing it is to give the court a comfort level that this statute in no way helps the plaintiffs here in the way they contend it helps them. You can stop. You can tell me to sit down if you want to. So you don't believe that some of the other factors are maybe disputed or there's confusion about how to apply those factors or anything of that nature? No, I think that the test is clear. It's straightforward. It's been applied numerous times. Well, here there was an action under the Consumer Fraud Act, right? Pardon me? There could be an action under the Consumer Fraud Act. And they're bringing it. Plaintiffs have brought an action under the Consumer Fraud Act against Westward Management. So that by itself is inadequate remedy. They're going under the Consumer Fraud Act. But I think, in my mind, the biggest one is the problem that the association, by doing what it's doing, has breached its fiduciary duty. The Act provides, it's paragraph 18.4 of the Act, provides that the Board of Managers is a fiduciary and has a fiduciary duty to all the owners, and that would include a seller. Now, if you go to this statute once again and go to paragraph A of 22.1, it says that the owner shall obtain from the Board of Managers. If you go to paragraph C, the last paragraph, it says that the Board of Managers may charge a fee for providing the information. The legislative contemplation was that these documents were going to be provided by the association, and for a good reason. If you look at those nine categories of documents under section 22.1, they contain information that would only be in the association's hands unless the association gave them to someone else. If the property manager didn't have that document, there's no way it can produce it unless the association allowed it. What the association did, for whatever its reason, is they said, and as Plains briefs admit, they directed the Channons to go to Westward. Okay. That may be the direction, and that may be what they consider to be a delegation. But fiduciary duties don't get delegated like that. A fiduciary duty is the duty to use the utmost and highest care to the people to whom you owe a fiduciary duty to. It's a duty of absolute loyalty. And because of it, that duty, and the case law says that duty is non-delegable. It makes sense, because a fiduciary relationship is a trust relationship. You know, the board of managers are elected. They're not appointed. They are elected by the association, and the association is all of the unit owners. So the unit owners place their trust in particular board members to do their job. A property manager just gets hired. The people in the association, the owners, may not even know who it is until they have need of him. And where a decision requires exercise of discretion and judgment, a fiduciary cannot give that away. Here, the plaintiffs claim that the Westward's charges were too high. Well, the association had a duty to know what those charges were. And they had a duty to tell their agent, as has been implied, you can't charge that much, it's too high. Or they had a duty to say, I'd like you, Mr. Agent, I'll let you charge it, but I've got to refund money to the members of the, to the sellers. You know, association members to whom a fiduciary duty is owed. When there is agency, as we all know, there is a right to control. The association had that right to control Westward, to tell Westward what it can do or not do. They didn't exercise it. So there is a, what has been called a centuries-old common law claim for breach of fiduciary duty, supported by the statute here, 18.4, which imposes it. There are also duties that an owner has under Section 19 of the Act. Section 19 provides that you have to produce certain documents. Section 18I says that includes an unpaid assessments letter. So basically, under other provisions, you're getting the same documents that are available, or most of the same documents, you're available under 22.1. And then, as Justice Carter said, there's the consumer fraud action that they are bringing here. The court, in the last couple minutes, the court agency analysis, I'm talking about the appellate court's agency analysis, is incorrect. The court said, you know, agents have liability under the law, and so Westward should have liability. That's not the issue in this case. It's not whether you can hold a particular defendant liable. That's not the provisions of the Act, and it's clearly not. The appellate court said, you know, the issue of whether Kenmore can be liable for what it did is not before us. Actually, it was before them, because if Kenmore could be sued, then there was a remedy. The Janins, the plaintiffs, just didn't exercise it. And finally, you know, if we're talking about agency principles, we're generally talking about vicarious liability. So a principle, meaning the association, is vicarious liability for the conduct of its agent. In short, there are a number of ways in which the remedies under the Act were very adequate. So we ask that this court to answer the certified question, no. Thank you very much. Thank you, Chief Justice Burke. May it please the Court. My name is Terry Sullivan. I represent the plaintiffs in this matter, Harry and Don Shannon, who are former condo owners. And when selling their condo, were effectively compelled to pay an unreasonable and excessive fee to obtain disclosure documents that are – that a seller has a statutory duty under 22.1a to provide to the buyer in order to close on the sale of the unit. And plaintiff is here today because a defendant challenged two Illinois courts that have interpreted Section 22.1 of the Condo Act to protect sellers in addition to buyers. And both Illinois – the Illinois Circuit Court and the appellate court in this matter ruled in favor of the plaintiff on the certified question, which they discussed in depth in their – in their opinions. And the appellate court was unanimous in finding that plaintiffs have an implied cause of action to enforce 22.1c against the property management agent of the condo association. And both lower courts correctly found that 22.1 protects the seller by looking at the plain language of the provision and applying pertinent rules of statutory construction and interpretation to the four-factor test for an implied cause of action, section 22.1a. And both lower courts considered the two Illinois appellate court decisions that considered – or that analyzed Section 22.1, that's the Tomo and Nikolopoulos, and both courts concluded that neither case held that 22.1 had the exclusive purpose of protecting only buyers. Counsel, would you agree that those cases held that that section primarily benefits buyers? Because that – that was the question presented to the courts at that time when those cases were being considered. But those – the courts in those cases did not – did not have to consider whether or not an implied cause of action would exist for a seller because the question simply wasn't before them. Well, what is your argument on that? Does 22.1 primarily benefit buyers? It primarily benefits both buyers and sellers. It – it primarily benefits all the parties that Section 22.1 identifies and that is part of the – the resale transaction. So that would include owners, the buyer, the association, and the board. All of these parties play a part in the – in the – in the resale transaction. So what is the purpose of the word primarily in that analysis? What does that mean? I think that – I will say that the – in the case law, primary is not – was not part of the actual four-factor test. It was – primary was included in the – the court's analysis. But I think that what primary means, it certainly does not mean exclusive. I think that primary means that the statute intended to protect more than – more than one party. What about the argument that – no, really, the primary purpose is to give the buyer – to be able to make an informed decision. So – because the information may be negative and then the buyer decides, I'm not going to buy. So, I mean, how does that protect – how is that supposed to benefit the seller? Well, for the seller, they have the duty under 22.18 to obtain the documents for – to provide – first and then to provide to their buyer. And I think that the – how the – the buyer is obviously going to be protected by receiving that information. But what the issue here on appeal is whether or not the language, the plain language of 22.1c, the direct out-of-pocket cost, protects the buyer. Protects the seller from having to pay excessive fees to obtain those very documents that protect the buyer as well. And the appellate court correctly applied a fundamental principle of statutory interpretation, and that's plain language is the highest indication of legislative intent. The act is not called the Condo Buyer Act. This is the Illinois Condominium Property Act. The title of the act is indicative of the legislature's intended reach. And by definition, as both courts recognize, condo sellers are definitionally owners. They appear in the definition. You're asking us to look at the whole act. Did the act as a whole, then? Absolutely. I – Wasn't that – wasn't that argument somewhat – I mean, that argument was raised by Justice Rarick in his dissent in Metzger, and it was discounted. But I would say that the act as a whole, when there's not a whole lot of legislative history here that touches on this issue, and looking at the act as a whole is informative, especially for the first factor, when we're – It may be informative, but six out of seven justices in Metzger did not agree with that proposal, correct? To look at – we look at the statute itself, not the act as a whole. Both, I would say. But even looking – even if we were to just look at the provision by itself, and just starting with the title, the title of 22.1 is resale, disclosures, fees. A resale cannot occur without the seller. Disclosures cannot be obtained only by the seller, and the fee is only imposed on the seller. So even looking at – even putting aside for the moment the act as a whole, Section 22.1, the plain language of it, is clearly indicative that sellers are protected in addition to buyers. You mentioned that before. You said that this statute in particular benefits more than one party. I mean, didn't the statutes in Metzger and Fisher also benefit more than one party? And, you know, this Court – so that's not enough. So in Metzger, the difference there was that the Court had already found that the plaintiff was not a member of the class for whose benefit the statute was enacted. But nonetheless, it went on and it examined all of the factors anyway. And in doing so, found that there were other – there were remedies in that – in the provision at issue that could have been used. That could – that the plaintiff could go – could turn to for redress. But that's not the case here when we look at the Condo Act. It's – as both courts recognize, there's no – there is no express remedy for a condo seller who has been aggrieved. But that would be the difference in those cases, is that Metzger, Fisher, there were other remedies, and the Court did not actually find that they were class members. And turning – now, just, I guess, on that point, the appellate court didn't use the term primary purpose to mean that Section 22.1 can only serve one purpose to the exclusion of others. And even if you go beyond Metzger, defendant's primary incidental argument is still unpersuasive because statutes and their provisions can have dual purposes. It may have been the legislature's intent to protect more than one party, especially here, where we have a transaction, two sides of a transaction, that arguably have an equal interest in being protected. And turning to the second factor, both the courts correctly found that the plain language of 22.1 demonstrates that it was designed to protect sellers from excessive fees, excessive and unreasonable fees. And both courts, they did not regard other pertinent terms in 22.1, such as may, shall, direct out-of-pocket costs, and reasonable, as being inconsequential. These terms assign obligations, and at the same time, they also provide protection to the seller. The appellate court also correctly found that 22.1 is designed to protect sellers from excessive fees. By ensuring that they can acquire the information from the party in possession of it. And here, the party in possession of the information was the agent who assumed the statutory duty of the association to both provide the documents and to charge a reasonable fee for the direct out-of-pocket costs. The appellate court explained that a seller without the ability to obtain the resale documents is likely to have difficulty finding a buyer. Essentially, what that means is that a seller cannot refuse to pay the fee. Without resale documents, the deal is dead. That is where the transaction stops. Turning to the third factor, both courts also correctly concluded that the purpose of Section 22.1 is for the protection of both the buyer and the seller. Specifically, sellers are protected by the plain language stating that only a reasonable fee covering the direct out-of-pocket costs may be charged to the seller for resale documents. And the appellate court appreciated the circuit court's point that today's buyer is tomorrow's seller. Recognizing the necessity for condo owners to be protected throughout the life cycle of their ownership, and under the different classifications that they are going to undertake during that cycle of ownership. And both courts also correctly determined that neither De Tomo nor Nicolopoulos held that Section 22.1 had the exclusive purpose of protecting buyers and no purpose of protecting sellers. Counsel, with respect to factor number three, what is the underlying purpose of the statute? For 22.1, the underlying purpose is to both facilitate the sale of a condominium and also to provide protections to the parties who are involved in this transaction. I believe that there are underlying purposes. The way that the statute is written, Section A, it doesn't stop at Section A. Section A is, I will admit, it does primarily protect the buyer, but we then have subsections B and C, which protects other parties to this transaction, namely the condo owner who is selling and the association. But what does the Metzger test tell us to look at, underlying purpose, the underlying purpose, or the underlying purposes? I believe that under, in Metzger, the underlying, the one, there was one underlying purpose in that case. But that's because that's what the statute in Metzger was the, you know, personnel code, I believe. But with the Condo Act, it's not so singular. The Condo Act is different. It's a multipurpose statute, if you will. And so the, I guess the analysis is, I'm not saying that Metzger is incorrect, but the way that the factors are being applied to this statute, it's a different lens of a multipurpose statute. And similar to the legislative intent to protect buyers through disclosure of information, sellers need protection, too. The legislature could not have intended for sellers to be blindsided by fees at the tail end of their condo ownership. This is why they included parameters in Section 22.1 and set obligations on specific parties. In Section 4, in the factors, whether there was an adequate remedy at all. There were adequate remedies at all that were not, not followed through with, correct? Respectfully, Your Honor. There was a cause of action to deal with the Consumer Fraud Act. Respectfully, Your Honor, the Consumer Fraud Act and really all of the remedies that are, that the defendant suggests are not part of the Rule 308 certified question. These are really just suggestions that the defendant has made, but this was not the question certified.  I would say yes and no, respectfully. But even if it, even if the, you know, the suggested remedies were, you know, for example, with the Consumer Fraud Act, you know, the circuit court's opinion went into detail about this and explained how the Condo Act and the Consumer Fraud Act claims differ. So just because, you know, it's not automatic that you violate the Condo Act automatically means that you violate the Consumer Fraud Act, and vice versa. You might, maybe you might violate the Consumer Fraud Act and not the Condo Act. That's, that's possible. And the defendant has never conceded plaintiff's claim under the Consumer Fraud Act. If the legislature had intended for the Consumer Fraud Act to be a remedy for a violation of the Condo Act, it would have put, it would have listed the Condo Act in its, in its Section 2Z, which includes the 31 other statutes that are, that are violated as well, in addition to the, in addition to the Consumer Fraud Act. But it didn't do that. It left, it left the Condo Act out of that section. Moreover, as the, both the circuit court and the appellate court correctly determined, Section 22.1 contains no remedy, penalty, or other enforcement mechanism for charging an excessive and unreasonable fee for resale documents. Without a private right of action for a seller, the statutory prohibition on charging an excessive fee would be ineffective. So courts do not easily create a private cause of action when none exists. Isn't that correct? I'm sorry? Circuit courts do not readily create a cause of action when none exists. And you're asking that this court find that there's a private cause of action because of the statute and the nature of this case when there is the metric factor number four that talks about adequate remedy that I referred to before. And the adequate remedy doesn't have to be the same kind of thing, does it? It was a high standard in element four, isn't it? I agree with that, Justice. However, there are no remedies. There are no express remedies in the statute for a seller under 22.1. There may, in other cases, there were some, there were remedies for the aggrieved plaintiff. In Metzger, they could have gone through administrative remedies for their complaints but they had something. Here, there is none for the seller. Practically speaking, when the seller is faced with a charge to obtain resale documents, their only option is to pay or lose the sale. That's, that is what their options are. But there are causes of action they could pursue. Which is what we've done, which is what we've done here in bringing a violation of the Condo Act under 22.1. That, that is the only, that's really the only remedy that, that a seller would have would be to bring a cause of action. We can't sue the association? We did not sue the association. No, you can't sue the association? Whether or not the association may be liable, again, respectfully, it's not part of the certified question on appeal. But moreover, the association is not the party who charged this fee. The fee is admittedly the defendant's fee that they charged and collected. So to the extent of the association's possible liability in this case, you know, I'm not, I'm not so sure. I mean, that doesn't factor into Factor IV of the Metzger effect? I do not believe it does. Not, not in this case. Here we have alleged in our complaint that defendant is the party who charged the fee, complained of, not the association. Well, here, what I'm bothered by is you limit the certified question to a very narrow scope. But included in that question would be whether there are adequate remedies available. And that's the reason I'm asking you, aren't there adequate remedies or remedy that, you know, against association, the Consumer Fraud Act, things that are available? The question about whether there's an adequate remedy does not mean the adequate remedy has to be the same that you might prefer. It could be as long as it's an adequate remedy. And that test is a high test, is it not? I agree that the, that it is a strict standard to find an implied cause of action. I, I do agree on that. However, to the, this issue of, of remedy is really speculative. I'm not sure even if the plaintiff had gone to the association and, let's say, complained of the fees, what would have actually, what would have happened  here? The association would have directed the plaintiff back to the property management agent because the association is not managing these documents. These documents are being controlled by the management agent because that's what they were retained to do. They were retained to help the association carry out the duties that are identified under the Condo Act. And as to the issue of. Counsel, your time is just on file. Okay. In conclusion, Your Honors, we ask that this honorable court uphold the appellate court's decision in finding for an implied private right of action for the sellers because they, too, need, need to be protected, just as buyers do. Thank you. Thank you. Mr. Esposito. Thank you, Your Honor. Just, just a couple brief points. The legislature told the association, you provide the documents. It's all over section 22.1. You provide the documents. And when the, when the association decided, I'm going to have my property manager provide the documents, that didn't give the association a free pass on complying with its statutory duty. Plaintiff has, has alleged that we are agents. The association is the principal. The principal has absolute control over its agent. The principal is the one that is supposed to be making sure that what the agent is doing is in conformity with the law. So if the principal feels that the, that the charges are too high, it better be telling the, the property manager lower or better be telling the, the owner, the seller, I'll refund you some or all of the money involved. Plaintiff here is, they tried to broaden it and then they tried to narrow it at the same time. You have to look at the act as a whole. 308 does not have an express right of action for, for getting back overcharges. That's what we're here fighting about. But the act as a whole provides those remedies. It provides breach of fiduciary duties, which we talked about a lot, and it provides about getting documents under other sections of the statute. And as this court has pointed out, it, it, it provides that you can go outside the statute to see if you have protection. That was the, that was the decision in advocacy that is cited in our brief and it, and it applies equally here. Is there any inference to be drawn from the fact that the statute does not provide any penalty for charging, you know, a certain amount that's determined to be excessive? Is there any inference? I don't, I don't think so. I mean, the, the, because plaintiff has a breach of fiduciary duty action. He can go in and say, hey, I got charged too much. Where were you? So, and then finally, I think there, there was, you know, some back and forth during the, during the argument about important or both are important and this, that kind of, that kind of give and take. I mean, primary has an ordinarily understood meaning, and that's what the courts work with, ordinarily understood meaning. It primarily means chief. It means most important. It means of greatest legal importance in the context of a statute. And, you know, plaintiff can, plaintiff can bring his action against the association. They chose not to do so. That was their decision. They had that option. They decided not to. And, and they didn't. But that doesn't mean that the, that the statute was inadequate. And it also doesn't mean that the, that the statute doesn't have a single primary purpose. And that purpose, the single primary purpose, is to help purchasers. You know, the, the trial court, I mean, it literally said that 22.1 has, provides a shred of protection. Think of a paper shredder and how small things are. The, the appellate court said the primary purpose is to help sellers. The fact that it can say, oh, I can see other purposes, doesn't matter. I mean, that's what the test is all about. Sure, you can see other purposes. The Supreme Court, the court in Fisher and in Metzger saw other purposes. But it only saw one primary purpose because that's what primary is all about. What is the chief purpose? And the chief purpose is to, is to protect the purchasers. Counsel, as opposing counsel points out, primary purpose is not the language in the Metzger test. Language in the Metzger test is whether plaintiff is within the class of members the statute was enacted to benefit. Is there a difference? No, because if you go on and read the statute, in fact, I believe I even remember the site. It's page 38 of the court's opinion in Metzger, where the court said they're not members of the primary class. The court's analysis, you know, the court is starting with a test in Metzger that is very well defined and had been used in other cases. But then it goes on, you know, and you have to read the whole decision. And the whole decision makes it very clear, as did Fisher, as did other cases, the appellate court cases, that we're looking to see what is primary and looking to see what is incidental. And we're following the primary. If we see a primary purpose is not, excuse me, in providing an implied cause of action, then we're not going to imply one. The, you know, it's been said here that Westward assumed a duty. Actually, it didn't. Westward was assigned a duty. The property manager tells it to go do these charges because the property manager, for its own reasons, decides not to do it. There is this reference to the judge Loftus' quote in the circuit court, you know, that today's buyers are tomorrow's sellers. Well, the statute doesn't protect today's sellers, so it really doesn't matter about tomorrow's sellers. The statute is there to protect the purchasers, so there's no implied right of action. There is a benefit that they receive by limiting the fees that could be charged. Is that a benefit? It's an incidental benefit. It's an incidental benefit to their obligation to provide these documents so that the purchaser gets benefited by deciding whether the purchaser wants to go ahead with the deal, which is always the purchaser's option. So you're saying the sellers only have an incidental benefit? Correct. By the statute? Correct. Limiting the amount of fees that would be charged for the information? Correct. That's right. If there's no further questions, I thank you. Thank you. Thank you. Case number 128040, Harry Channon v. Westwood Management, Inc., will be taken under advisement by this court as agenda number 20. I want to thank you, Mr. Esposito, for your argument, and again, Ms. Sullivan, thank you.